IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

LCI, a Minor, GMI, a Minor, MTI, a Minor, and KERI INNIS their Guardian, and
Next Friend, XHK, a Minor, PRISCILLA MULLER and COLBY KUEMMERLIN,
his Guardians, and Next Friends, MSH, a Minor, MATIN SAAHIRA HAAMID, her
Guardian, and Next Friend, and MDF, a Minor, RAQUELLE FERGUSON and
JONATHAN FERGUSON, his Guardians, and Next Friends

Plaintiffs,

v.

POUDRE SCHOOL DISTRICT R-1; COLORADO DEPARTMENT OF
EDUCATION; COLORADO STATE BOARD OF EDUCATION; TYLER
ZANELLA, an individual; and
DOES 1-50, who are presently unknown persons,

Defendants.

---

## COMPLAINT AND JURY DEMAND

---

COME NOW Plaintiffs LCI, a Minor, GMI, a Minor, MTI, a Minor, and KERI

INNIS their Guardian, and Next Friend, XHK, a Minor, PRISCILLA MULLER and

COLBY KUEMMERLIN, his Guardians, and Next Friends, MSH, a Minor, MATIN

SAAHIRA HAAMID, her Guardian, and Next Friend, MDF, a Minor, RAQUELLE

FERGUSON and JONATHAN FERGUSON, his Guardians, and Next Friends (LCI,

GMI, MTI, XHK, MSH, MDF are collectively the "Children Plaintiffs.") KERI

INNIS, PRISCILLA MULLER, COLBY KUEMMERLIN, MATIN SAAHIRA

1

HAAMID, RAQUELLE FERGUSON, and JONATHAN FERGUSON are collectively the "Parent Plaintiffs." The Children Plaintiffs and Parent Plaintiffs are sometimes collectively referred to as the "Plaintiffs"), by and through Counsel, and Complain against Defendants POUDRE SCHOOL DISTRICT R-1 (hereafter "PSD"); COLORADO DEPARTMENT OF EDUCATION (hereafter "CDE"); COLORADO STATE BOARD OF EDUCATION (hereafter "CSBE"); TYLER ZANELLA ("Zanella") an individual, and DOES 1-50 (PSD, CDE, and CSBE are sometimes collectively referred to as the "Governmental Entity Defendants.") (the Governmental Entity Defendants and Defendant Zanella are sometimes collectively referred to as the "Defendants"), as follows:

## INTRODUCTION

### Defendants' Hiring of Tyler Zanella

1.      On or about August 2022, PSD hired Defendant Zanella. Defendant Zanella was hired for one of the most important jobs in the Poudre School District. That was as a 'paraprofessional' to assist children who could not assist themselves. Children with special needs, who needed a caring and helping hand to merely get to and from school where they received schooling that could potentially help them live a life to their full potential. The PSD, through their own job description for a paraprofessional such as Defendant Zanella, articulated that the position was to "ensur[e] students are safe during the loading, unloading, transporting, and

transferring on buses."

2.     Plaintiffs are informed that Defendant Zanella was hired by PSD despite having knowledge of Defendant Zanella's lengthy criminal background that included:

      a.     A guilty plea for child abuse in 2012; and,

      b.     Multiple DUI arrests and convictions-one of which occurred a mere week before he began his employment at PSD.

3.     Plaintiffs are further informed, that Amanda Tate, who was the Poudre School District Transportation Dispatcher and agent of the Governmental Entity Defendants, and who was in a personal relationship with Defendant Zanella, may have been instrumental in his hiring.

4.     The Governmental Entity Defendants utterly failed to properly oversee the hiring of Defendant Zanella and/or to enact safeguards to prevent nepotism with respect to his hiring. These safeguards were of the utmost importance given the Governmental Entity Defendants' hiring of Defendant Zanella in a very sensitive position that required protection of the most vulnerable of children. Had the Governmental Entity Defendants properly overseen the hiring of Defendant Zanella, they would have discovered his lack of qualifications for the position and his lengthy criminal record, which reflects Defendant Zanella's flagrant disregard for the law since 2004.

**The Children Plaintiffs and Defendant Zanella's Abhorrent Conduct**

5.      Outrageously, Defendant Zanella's abuse appears to have been directed in a secretive way towards the most vulnerable children. The Children Plaintiffs are between six to eleven years old. The Children Plaintiffs who endured the more frequent, almost daily, abuse, were children who are considered non-verbal. Further, the Children Plaintiffs, strapped into their bus seats were utterly defenseless against Defendant Zanella's abuse. Additionally, the Children Plaintiffs, who are non-verbal, were also completely unable to verbalize their pain to anyone-parents, teachers-no one. Further, when some of the Children Plaintiffs ride the PSD bus, they are restrained in a 'five-point' harness. This makes the conduct described below even more abhorrent as the Children Plaintiffs were completely unable to defend themselves.

6.      Plaintiff LCI, a minor and disabled person, is a resident of Larimer County, Colorado. LCI was a student at Shepardson Elementary School, an entity of the Governmental Entity Defendants, and had impairments that constitute disabilities under Federal and State Law.

7.      LCI travelled on the Governmental Entity Defendants' school bus, staffed by Defendant Zanella, during the 2022 to 2023 school year. Defendant Zanella can be seen in the school bus's video footage hitting LCI on or near his head with a clenched fist. At other times, the video footage shows Defendant Zanella

hitting LCI on or near his head with his cell phone. Defendant Zanella can also be seen, on many occasions, literally and repeatedly ramming LCI's head into the school bus windows. The video comes with audio, and you can hear the hitting, hear the banging of this small child's head against the window. LCI would react, as best he could, to being abused and battered by Defendant Zanella, and Defendant Zanella can be heard mocking LCI, and challenging LCI to "hit me back." It is believed that many other instances of abuse, which were not caught on video, of LCI by Defendant Zanella exist. Importantly, LCI witnessed Defendant Zanella's abuse of LCI's siblings and the other Children Plaintiffs.

8.      Plaintiff GMI, a minor and disabled person, is a resident of Larimer County, Colorado.  GMI was a student at Shepardson Elementary School, an entity of the Governmental Entity Defendants, and had impairments that constitute disabilities under Federal and State Law.

9.      GMI was taken to and from school on the Governmental Entity Defendants' school bus, staffed by Defendant Zanella, during the 2022 to 2023 school year. GMI witnessed Defendant Zanella's abuse of GMI's siblings, and the other Children Plaintiffs. It is also believed that Defendant Zanella directly abused GMI, although the Parent Plaintiffs have not had access to all of the video from the bus.

10.     Plaintiff MTI, a minor and disabled person, is a resident of Larimer

County, Colorado. MTI was a student at Shepardson Elementary School, an entity of the Governmental Entity Defendants, and had impairments that constitute disabilities under Federal and State Law.

11.     MTI was taken to and from school on the Governmental Entity Defendants' school bus, staffed by Defendant Zanella, during the 2022 to 2023 school year. As with LCI, Defendant Zanella can be seen and heard in the school bus's video footage hitting MTI with a clenched fist, and at other times, with his cellphone. Defendant Zanella can also be seen ramming MTI's head into the school bus windows. The visual and audio makes one cringe. It is a certainty that many other instances of abuse of MTI by Defendant Zanella exist. MTI's disabilities required the use of a five-point harness while he was travelling on the school bus, making him even more vulnerable to Defendant Zanella's abuse. MTI witnessed Defendant Zanella's abuse of LCI's siblings and the other Children Plaintiffs.

12.     Plaintiff Keri Innis, parent and next friend of Plaintiffs LCI, GMI, and MTI, is a resident of Larimer County, Colorado.

13.     Plaintiff XHK, a minor and disabled person, is a resident of Larimer County, Colorado. XHK was a student at Bacon Elementary School, an entity of the Governmental Entity Defendants, and had impairments that constitute disabilities under Federal and State Law.

14.     XHK was taken to and from school on the Governmental Entity

Defendants' school bus, staffed by Defendant Zanella, during the 2022 to 2023 school year. On at least six separate days, Defendant Zanella can be seen in the school bus's video footage striking XHK's head. On a seventh day, Defendant Zanella can be seen striking XHK's head during both the morning bus trip and the evening bus trip. Defendant Zanella can be seen grabbing Xavier by his elbow and pulling Xavier close to Defendant Zanella's body in an effort to cover XHK's head while striking XHK. Zanella can also be seen rubbing XHK's head after striking it, in such a way where it was even more painful for XHK. The videos are heartbreaking. XHK can be seen rubbing his own head and humming to himself while looking in sheer terror at Defendant Zanella. All the time, Defendant Zanella is repeatedly calling XHK a "little fuck." Unbelievably, in one video, Zanella can also be seen and heard making racially charged comments to XHK, calling XHK, who is bi-racial, a "black little fuck." Defendant Zanella would then mock: "are you going to tell your mom?" Defendant Zanella knew that XHK was non-verbal. It is also a certainty that many other instances of abuse of XHK by Zanella exist.

15.     Plaintiffs Priscilla Muller and Colby Kuemmerlin, are the parents and next friends of Plaintiff XHK, and are residents of Larimer County, Colorado.

16.     Plaintiff MSH, a minor and disabled person, is a resident of Larimer County, Colorado. MSH was a student at Shepardson Elementary School, an entity of the Governmental Entity Defendants, and had impairments that constitute

disabilities under Federal and State Law.

17. MSH was taken to and from school on the Governmental Entity Defendants' school bus, staffed by Zanella, during the 2022 to 2023 school year. On at least one occurrence, Zanella can be seen and heard in the school bus's video footage striking MSH's head. It is also believed that many other instances of abuse of MSH by Zanella exist, although the Parent Plaintiffs have not had access to all of the video from the bus.

18. Plaintiff Matin Saahira Haamid, parent and next friend of Plaintiff MSH, is a resident of Larimer County, Colorado.

19. Plaintiff MDF, a minor and disabled person, is a resident of Larimer County, Colorado. MDF was a student at Shepardson Elementary School, an entity of the Governmental Entity Defendants, and had impairments that constitute disabilities under Federal and State Law.

20. MDF was taken to and from school on the Governmental Entity Defendants' school bus, staffed by Zanella, during the 2022 to 2023 school year. On at least one occurrence, Defendant Zanella touched the genitals of MDF. Plaintiffs Raquelle Ferguson and Jonathan Ferguson, allege, to an almost certainty that additional video footage will show additional occasions of sexual battery toward MDF. Defendant Zanella can also be seen striking MDF with his fist on MDF's leg, and the audio provides clear evidence that these hits are not "love-taps" - they are

meant to cause pain. As with all the other Children Plaintiffs, MDF witnessed Defendant Zanella strike another child ("Gigi") with her backpack that she used to bring school supplies to school. MDF told Defendant Zanella "Don't hit Gigi," to which Defendant Zanella responded "Shut up spoiled brat." When MDF was shown a photo of Defendant Zanella, MDF stated that "He is a psycho" and "he is a bad guy."

21.    Plaintiffs Raquelle Ferguson and Jonathan Ferguson, are the parents and next friends of Plaintiff MDF, and are a residents of Larimer County, Colorado.

22.    On some occasions described above, Defendant Zanella would appear to wait until the bus driver was looking away before abusing the Children Plaintiffs. When another staff member of the Governmental Entity Defendants would enter the bus, Defendant Zanella would make it appear as if he was simply playing with the Children Plaintiffs rather than abusing them.

23.    While there can be no excuse for Zanella's actions, the video tape evidence, and the audio, do not lie. Each and every of the physical and verbal attacks upon these helpless children were unprovoked.

## Defendants' Were Placed On Notice Of Zanella's Conduct and, At Best, Did Nothing

24.    Plaintiffs are informed that a complaint was made regarding Defendant Zanella by a parent of a victim of Defendant Zanella to the Governmental Entity

Defendants on or about January 2023.

25.    On or about January or February of 2022, another parent complained about Plaintiff GMI's behavior on the school bus. In response, Wayne Thornes ("Mr. Thornes"), the Governmental Entities Defendants' principal at Shepardson Elementary School, along with another paraprofessional rode the bus that Defendant Zanella was staffing for approximately two weeks. Plaintiff Keri Innis, who was at the time unaware that video footage from inside the bus existed, expressed concern that everyone would just be on their best behavior while they were being monitored by Mr. Thornes and the other paraprofessional. Unbelievably, and although it existed, the Governmental Entity Defendants did not even attempt to review video footage which was readily available. Even a cursory review would have revealed the abuse inflicted by Zanella.

26.    During the 2022 school year, Plaintiff Priscilla Muller noticed that XHK kept having bruises on his left side, had handprint marks on his arms, and, at one point, had a bruise on his forehead. On at least two occasions, Plaintiff Priscilla Muller complained to XHK's teacher, and the Governmental Entity Defendants' employee Alex Pewitt ("Ms. Pewitt") and inquired as to how the bruises could have occurred. Ms. Pewitt indicated that she did not know where they came from, and then did nothing. She failed to report the complaints; she failed to take the complaints to her superiors; and the Governmental Entity Defendants, again, missed an opportunity to

review the video footage.

27. On or about March 2, 2023, Plaintiff Matin Saahira Haamid sent an email to Mr. Thornes and Lisa Hernandez, the Governmental Entity Defendants' autism coach, outlining various complaints regarding MSH's teacher, and the Governmental Entity Defendants' employee Jennifer Randal ("Ms. Randall"). Interestingly, Plaintiff Matin Saahira Haamid at that time had no knowledge and thus made no mention of, any issues related to the bussing of MSH. Approximately one week later however, MSH was suddenly removed from the bus that Defendant Zanella was staffing. When Plaintiff Matin Saahira Haamid asked Ms. Randall why a change was made to MSH's bus assignment, Ms. Randall responded that Mahdi "needed a monitor."

28. Despite these complaints, and despite Zanella being a new hire for the 2022 to 2023 school year, the Governmental Entity Defendants failed to review any video footage from inside of the school bus that Defendant Zanella staffed until after May 22, 2023, when another parent of a victim of Defendant Zanella complained about Defendant Zanella's conduct to the Governmental Entity Defendants.

29. Despite these complaints, and despite Zanella being a new hire for the 2022 to 2023 school year, the Governmental Entity Defendants failed to conduct any investigation into the complaints, including interviewing anyone with potential knowledge of Zanella's conduct, including the school bus drivers, the Governmental Entity Defendants' staff who worked alongside Zanella, or the Parent Plaintiffs of the

Children Plaintiffs who were ostensibly being "taken care of" by Defendant Zanella.

**Then, and Even Worse, The Governmental Entity Defendants Attempted to Conceal the Physical and Verbal Abuse**

30.    Rather, the Governmental Entity Defendants' staff attempted to cover up Defendants' conduct by stating that video footage from within the school bus was only retained for a very short period of time. As part of the "cover-up" of Defendant Zanella's conduct Plaintiff Keri Innis was told by PSD's Human Resources assistant, Emily Bickerton ("Ms. Bickerton") that video footage of Zanella had not been reviewed because "only a few days of footage are saved."

31.    However, law enforcement has now determined that, the video footage was retained by the Governmental Entity Defendants for many months. The video footage of the bus rides contains sound and is recorded from both the front and rear of the interior of Governmental Entity Defendants' school busses.

32.    In response to initial investigations by law enforcement regarding Defendant Zanella's abuse, and despite having a legal obligation to comply with law enforcement's investigation and provide all available video footage from inside the bus, the Governmental Entity Defendants initially decided to "pick and choose" what video tapes they provided in response to the investigation, and, withheld evidence by only providing "cherry picked" video tapes of certain children on certain days. At some point in time, law enforcement determined that they were being "hoodwinked"

and demanded that all available video footage needed to be produced. That is when the extent of Defendant Zanella's abuse became known to the Parent Plaintiffs.

33.   Mr. Thornes, the Governmental Entities' principal, admitted to Plaintiff Keri Innis that he failed to investigate any of the prior complaints that he had received, other than conducting some sort of self-investigation that consisted solely of, apparently, a conversation with Defendant Zanella. After Defendant Zanella assured Mr. Thornes that everything was fine, rather than any further action, such as looking at the video from within the bus, Mr. Thornes's investigation stopped there. Mr. Thornes admitted that he knew that the video footage existed as he supposedly made a note to himself to go back and look at the videos; however, he then admittedly failed to do so.

34.   Plaintiffs are informed that any drivers of the school buses that Defendant Zanella staffed were clearly aware of Defendant Zanella's conduct and either reported that conduct to the Governmental Entity Defendants, failed to report that conduct to the Governmental Entity Defendants, or were improperly trained on reporting of that conduct to the Governmental Entity Defendants.

35.   Plaintiffs are informed and believe, and based on that belief allege that other employees of the Governmental Entity Defendants were aware of Defendants Zanella's conduct and either reported that conduct to the Governmental Entity Defendants, failed to report that conduct to the Governmental Entity Defendants, as

mandatory reporters of child abuse or neglect, under Colorado Revised Statute Section 19-3-304.[1], or were improperly trained on reporting of that conduct to the Governmental Entity Defendants.

36.     The Governmental Entity Defendants, despite actual knowledge that Plaintiffs were at substantial risk of abuse by Defendant Zanella, failed to report such previous conduct of Defendant Zanella and the substantial risk he posed to the Children Plaintiffs to the Parent Plaintiffs or to law enforcement authorities, and failed to adopt or implement policies and procedures to alleviate such risk or protect the Children Plaintiffs or other students from such risk.

**<u>Defendants</u>**

37.     Defendant Poudre School District R-1 ("PSD") is a governmental entity, an educational institution of the State of Colorado, created by C.R.S. §22-80-102, located in the City of Fort Collins, County of Larimer, that has for its object the education of the children of the state. Both Shepardson Elementary School and Bacon

---

[1] Colorado Revised Statute section 19-3-304, subd.(1)(a): "Except as otherwise provided by section 19-3-307, section 25-1-122 (4) (d), C.R.S., and paragraph (b) of this subsection (1), any person specified in subsection (2) of this section who has reasonable cause to know or suspect that a child has been subjected to abuse or neglect or who has observed the child being subjected to circumstances or conditions that would reasonably result in abuse or neglect shall immediately upon receiving such information report or cause a report to be made of such fact to the county department, the local law enforcement agency, or through the child abuse reporting hotline system as set forth in section 26-5-111, C.R.S."

Elementary School are within the Poudre School District R-1.

38.    Defendant Colorado State Board of Education ("CSBE") is a governmental entity, created within the Defendant Colorado Department of Education ("CDE") by a "type 1 transfer" pursuant to C.R.S. §22-80-103(1)(a), with powers and duties to act for the CDE to govern and operate CSBE, including, but not limited to, acting as a public entity for purposes of the Colorado Governmental Immunity Act, under C.R.S. §22-80-103, promulgating rules to implement provisions of law related to operation of CSBE, training, mentoring and professional development of CSBE teachers, exercising complete jurisdiction over management of CSBE, and acting on behalf of the State of Colorado pursuant to statutory authorization.

39.    Defendants Does 1-50 are persons employed by the Governmental Entity Defendants, and others, identified in redacted police investigative reports concerning the conduct complained of within this Complaint, who were or may have been a legal cause of the acts, injury, damages or loss complained of within this Complaint. Investigation of the knowledge and conduct of said Doe Defendants continues.

### JURISDICTION & VENUE

40.    This Court has jurisdiction under 28 U.S.C. §1331. Claims for relief within this Complaint arise under (a) 42 U.S.C. §1983 and §1988, (b) Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681 et seq., (c) Title II of the Americans with Disabilities Act, 42 U.S.C. §12134, and (d) the Rehabilitation Act

of 1973, including Section 504, 29 U.S.C. §§701, 705, 794, and 794a, as more fully appears throughout this Complaint. Venue is proper in this District under 28 U.S.C. §1391(b), because the events or omissions giving rise to the claims within this Complaint occurred in this District.

41.     Plaintiffs have complied with the jurisdictional requirements of C.R.S. §24-10- 101 et seq. by serving a Notice of Claim on the POUDRE SCHOOL DISTRICT R-1 and COLORADO DEPARTMENT OF EDUCATION; COLORADO STATE BOARD OF EDUCATION, and on the Attorney General of the State of Colorado, via Certified Mail. A Notice of Claim was sent on behalf of LCI, GMI, MTI and Keri Innis on June 1, 2023. A Notice of Claim was sent on behalf of XHK, Priscilla Muller, and Colby Kuemmerlin on June 8, 2023. A Notice of Claim was sent on behalf of MSH and Matin Saahira Haamid on June 13, 2023. A Notice of Claim was sent on behalf of MDF, Raquelle Ferguson, and Jonathan Ferguson on June 29, 2023. Despite having a moral obligation to do so, Defendants have failed to provide any Response to said Notices of Claim within 90 days of service.

///

///

///

///

## FIRST CLAIM FOR RELIEF:

## VIOLATIONS OF 42 U.S.C. §1983

## BY ALL PLAINTIFFS, and AGAINST THE GOVERNMENTAL ENTITY DEFENDANTS

42.     All averments and allegations in the preceding paragraphs are incorporated herein by this reference with the same effect as if restated herein.

43.     This is a civil action alleging violations of the United States Constitution for which Plaintiffs seek redress under 42 U.S.C. § 1983.

44.     The Children Plaintiffs were and are members of a limited and specifically identifiable group that are disabled and have severe developmental impairments and are therefore eligible for specialized education and transportation to and from school by Defendants.

45.     42 U.S.C. § 1983 authorizes suits to redress deprivations of any rights, privileges, or immunities secured by the Constitution and laws. The Constitution, through the Fourteenth Amendment's substantive due process component, creates a substantive due process right to bodily security in students who have a special relationship with a State public school. The Constitution, through the Fourteenth Amendment's substantive due process component, additionally creates a substantive due process right to protection from interference with a parent / child relationship.

46.     As alleged within this Complaint, The Governmental Entities'

employee, Defendant Zanella, severely abused the Children Plaintiffs.

47.     As alleged within this Complaint, The Governmental Entities' employee, Defendant Zanella, severely abused the Children Plaintiffs.

48.     As alleged within this Complaint, the Governmental Entities, among other conduct and failures:

      a.      Negligently hired Defendant Zanella;

      b.      Failed to adequately monitor Zanella;

      c.      Failed to adequately investigate complaints regarding Defendant Zanella.

      d.      Failed to implement adequate policies that would have prevented Defendant Zanella's abuse.

49.     At the time of the conduct alleged within this Complaint, under clearly established constitutional authority of the U.S. Supreme Court and the Tenth Circuit, government entities, such as the Governmental Entities, may be liable under §1983 for failing to train subordinates or adopt or implement adequate policies that would have prevented the abuse of the Children Plaintiffs.

50.     At the time of the conduct alleged within this Complaint, under clearly established constitutional authority of the U.S. Supreme Court and the Tenth Circuit, government entities, such as the Governmental Entities, may be liable under §1983

for having a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary to adopt or implement adequate policies that would have prevented the abuse of the Children Plaintiffs, under the well-established "special relationship" and "danger creation" doctrines.

51.    At the time of the conduct alleged within this Complaint, under clearly established constitutional authority of the U.S. Supreme Court and the Tenth Circuit, government entities, such as the Governmental Entities, may be liable under §1983 for interfering in a parent / child relationship by harming a parent or child in a manner that shocks the conscience.

52.    The Governmental Entities, at all times relevant to this action, were acting under color of state law, and their conduct deprived Plaintiffs of their federal rights, abused the Governmental Entities' special relationship with Plaintiffs, and created a danger to Plaintiffs, by subjecting Plaintiffs to harm that would not have occurred in the absence of their conduct, and violated clearly established statutory and constitutional rights.

53.    The Governmental Entities' conduct also constitutes reckless and conscious disregard or deliberate indifference for the risk of abuse of the Children Plaintiffs by Defendant Zanella, reckless and conscious disregard or deliberate indifference to the Children Plaintiffs' constitutional right to bodily security, reckless and conscious disregard or deliberate indifference to Plaintiffs' parent /

child relationships, which created a danger that would not have existed but for the Governmental Entities' conduct and / or policies, and shocks the conscience.

54.     The conduct and policies of the Governmental Entities, and each of them, placed Plaintiffs at foreseeable, substantial, and unreasonable risk of serious, immediate, and proximate harm, due to the Governmental Entities' conduct.

55.     The conduct and official policies of the Governmental Entities, and each of them, constitutes reckless or callous indifference to the federally protected rights of Plaintiffs, and wanton and reckless disregard for the rights and safety of Plaintiffs.

56.     As a direct and proximate result of the Governmental Entities' conduct, Plaintiffs have suffered and will continue to suffer economic and non-economic injuries and loss including physical, psychological and emotional injury, loss of earning capacity, impairment of quality of life, pain, suffering, mental and emotional distress, loss of enjoyment of life, and other damages to be established at trial.

WHEREFORE, Plaintiffs pray for relief against the Governmental Entities in this claim for relief, as follows:

      a.     compensatory damages as determined by a jury;

      b.     reasonable attorney fees, expert witness fees, and costs pursuant to 42 U.S.C. § 1988;

      c.     such further legal and equitable relief as this Court deems just.

## SECOND CLAIM FOR RELIEF:

## HOSTILE LEARNING ENVIRONMENT IN VIOLATION OF AMERICANS WITH DISABILITIES ACT and REHABILITATION ACT BY THE CHILDREN PLAINTIFFS, and AGAINST ALL DEFENDANTS

57.     All averments and allegations in the preceding paragraphs are incorporated herein by this reference with the same effect as if restated herein.

58.     The Children Plaintiffs have disabilities under Federal and State law.

59.     The conduct, errors, and omissions of Defendants, and each of them, created and resulted in a hostile educational environment for the Children Plaintiffs, who are persons with disabilities within the meaning of the Americans with Disabilities Act.

60.     Abuse of the Children Plaintiffs, as a result of the Defendants' failures, altered the conditions of their education, had substantial negative effects on the ability of the Children Plaintiffs to receive an education, and created an abusive educational environment.

61.     As a result of the foregoing, the Children Plaintiffs have been excluded from participation in and/or denied benefits of the services, programs or activities of a public entity, or subjected to discrimination by a public entity, within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et. seq.* and the Rehabilitation Act of 1973, including Sections 504, 29 U.S.C. § 701, *et. seq.*, 705,

794, and 794a.

62.     The Children Plaintiffs were otherwise qualified for benefits that were denied.

63.     The Children Plaintiffs were denied benefits by reason of their disabilities and Defendant Zanella's abuse.

64.     The ability of the Children Plaintiffs to engage in a major life activity, namely learning, was substantially limited because they are impaired with a disability, and were abused by Defendant Zanella.

65.     The actions and omissions of Defendants violated the Americans with Disabilities Act, including Title II and 42 U.S.C. § 12101 *et seq*.

66.     The actions and omissions of Defendants violated the Rehabilitation Act of 1973, including Section 504, 29 U.S.C. § 701, *et. seq*., 705, 794, and 794a.

WHEREFORE, the Children Plaintiffs pray for relief against Defendants in this claim for relief, as follows:

    a.      compensatory damages as determined by a jury;

    b.      reasonable attorney fees, expert witness fees, and costs pursuant to 42 U.S.C. §12205 and 29 U.S.C. §794(a); and

    c.      such further legal and equitable relief as this Court deems just.

///

## THIRD CLAIM FOR RELIEF:

## ASSAULT

## BY THE CHILDREN PLAINTIFFS, and AGAINST DEFENDANT ZANELLA

67. All averments and allegations in the preceding paragraphs are incorporated herein by this reference with the same effect as if restated herein.

68. Through Defendant Zanella's conduct alleged within this Complaint, Defendant Zanella intended to cause an offensive and / or harmful contacts with the Children Plaintiffs or intended to place the Children Plaintiffs in apprehension of such contact.

69. Defendant Zanella placed the Children Plaintiffs in apprehension of immediate physical contact and that contact appeared to be harmful or offensive.

WHEREFORE, the Children Plaintiffs pray for relief against Defendant Zanella in this claim for relief, as follows:

a. compensatory damages as determined by a jury;

b. such further legal and equitable relief as this Court deems just.

## FOURTH CLAIM FOR RELIEF:

## BATTERY

## BY THE CHILDREN PLAINTIFFS, and AGAINST DEFENDANT ZANELLA

70. All averments and allegations in the preceding paragraphs are incorporated herein by this reference with the same effect as if restated herein.

71.  Through Defendant Zanella's conduct alleged within this Complaint, Defendant Zanella physically contacted the Children Plaintiffs.

72.  Defendant Zanella intended to make harmful or offensive physical contact with the Children Plaintiffs, or knew that he would probably make such contact.

73.  Defendant Zanella's contact was harmful and offensive.

WHEREFORE, the Children Plaintiffs pray for relief against Defendant Zanella in this claim for relief, as follows:

a.    compensatory damages as determined by a jury;

b.    such further legal and equitable relief as this Court deems just.

### **FIFTH CLAIM FOR RELIEF:**

### **FALSE IMPRISONMENT**

### **BY THE CHILDREN PLAINTIFFS, and AGAINST DEFENDANT ZANELLA**

74.  All averments and allegations in the preceding paragraphs are incorporated herein by this reference with the same effect as if restated herein.

75.  Through Defendant Zanella's conduct alleged within this Complaint, Defendant Zanella intended to restrict the Children Plaintiffs' freedom of movement.

76.  Defendant Zanella directly or indirectly restricted the Children Plaintiffs' freedom of movement for a period of time.

77. The Children Plaintiffs were aware that their freedom of movement was restricted by Defendant Zanella.

78. Zanella acted under no privilege of arrest or imprisonment.

WHEREFORE, the Children Plaintiffs pray for relief against Defendant Zanella in this claim for relief, as follows:

      a.     compensatory damages as determined by a jury;

      b.     such further legal and equitable relief as this Court deems just.

## SIXTH CLAIM FOR RELIEF:

## EXTREME AND OUTRAGEOUS CONDUCT – EMOTIONAL DISTRESS BY PLAINTIFFS, and AGAINST ALL DEFENDANTS

79. All averments and allegations in the preceding paragraphs are incorporated herein by this reference with the same effect as if restated herein.

80. Defendant Zanella's conduct alleged within this Complaint was extreme and outrageous.

81. The Governmental Entities's conduct alleged within this Complaint was extreme and outrageous. The extreme and outrageous conduct includes, but is not limited to:

      a.     The negligent hiring of Defendant Zanella;

      b.     The failure to adequately monitor Zanella;

      c.     The failure to adequately investigate complaints regarding

Defendant Zanella.

d.    The failure to implement adequate policies that would have prevented Defendant Zanella's abuse

e.    The initial failure to comply with law enforcement's investigation into Defendant Zanella's abuse.

82.   Defendants engaged in the conduct recklessly and with the intent of causing Plaintiffs severe emotional distress and Defendants' conduct caused Plaintiffs severe emotional distress.

WHEREFORE, Plaintiffs pray for relief against Defendants in this claim for relief, as follows:

a.    compensatory damages as determined by a jury;

b.    such further legal and equitable relief as this Court deems just.

## <u>SEVENTH CLAIM FOR RELIEF:</u>

## SEXUAL HARASSMENT IN VIOLATION OF TITLE IX [20 U.S.C. §168l(a)] BY MDF, and AGAINST THE GOVERNMENTAL ENTITY DEFENDANTS

83.   All averments and allegations in the preceding paragraphs are incorporated herein by this reference with the same effect as if restated herein.

84.   The Governmental Entity Defendants are recipients of federal financial assistance within the meaning of 20 U.S.C. §1681(a).

85.   As alleged within this Complaint, Defendant Zanella sexually harassed

Plaintiff MDF.

86.    As alleged within this Complaint, the Governmental Entity Defendants had actual knowledge of prior acts of child abuse by Defendant Zanella.

87.    The hiring of and / or failure to monitor Defendant Zanella by the Governmental Entity Defendants was clearly unreasonable and inadequate, and constituted deliberate indifference, and wanton and reckless disregard for the rights and safety of MDF.

88.    The Governmental Entity Defendants were deliberately indifferent to sexual harassment of MDF, and said harassment created a hostile educational environment, and was so severe, pervasive, and objectively offensive, and so undermined and detracted from MDF's educational experience, that MDF was effectively denied equal access to educational resources and opportunities provided by the Governmental Entity Defendants.

89.    The Governmental Entity Defendants deliberate indifference to Defendant Zanella's conduct created an intimidating, hostile, offensive and abusive school environment that violated Title IX of the Education Amendments of 1972, which prohibits a student from being excluded from participation in, denied the benefits of, or being subjected to discrimination under any education program or activity receiving federal financial assistance.

90.    At the time of the conduct alleged within this Complaint, under clearly

established statutory and constitutional authority of the U. S. Supreme Court and the Tenth Circuit, government entities, such as the Governmental Entity Defendants, may be liable under Title IX for having a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary to adopt or implement a policy to prevent sexual assault on a severely disabled child, like MDF, that constitutes intentional sexual harassment and effectively denied MDF equal access to educational resources and opportunities provided by Defendants, a recipients of federal funds under Title IX.

91. The harassment alleged within this Complaint occurred under the operations of the Governmental Entity Defendants, under circumstances in which the Governmental Entity Defendants exercised substantial control over both Defendant Zanella and the context in which said harassment occurred, and Defendant Zanella was under the Governmental Entity Defendants' control.

92. The actions and omissions of Defendants violated Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 et seq.

WHEREFORE, MDF prays for relief against the Governmental Entity Defendants in this claim for relief, as follows:

    a.    compensatory damages as determined by a jury;

    b.    reasonable attorney fees, expert witness fees, and costs pursuant to 20 U.S.C. §1681 et seq. and 42 U.S.C.

§1988;

c.    such further legal and equitable relief as this Court deems just.

## EIGHTH CLAIM FOR RELIEF:

## SEXUALLY HOSTILE LEARNING ENVIRONMENT IN VIOLATION OF AMERICANS WITH DISABILITIES ACT and REHABILITATION ACT BY MDF, and AGAINST ALL DEFENDANTS

93.    All averments and allegations in the preceding paragraphs are incorporated herein by this reference with the same effect as if restated herein.

94.    MDF has disabilities under Federal and State law.

95.    The conduct of Defendants, and each of them, created and resulted in a hostile educational environment for MDF, a person with disabilities within the meaning of the Americans with Disabilities Act.

96.    Sexual assault of MDF as a result of the Defendants' conduct and failures altered the conditions of MDF's education, had substantial negative effects on the ability of MDF to receive an education, and created an abusive educational environment.

97.    As a result of the foregoing, MDF has been excluded from participation in and/or denied benefits of the services, programs or activities of a public entity, or subjected to discrimination by a public entity, within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12134 and the Rehabilitation Act of

1973, including Section 504, 29 U.S.C. § 701, 705, 794, and 794a.

98.     MDF was otherwise qualified for benefits that were denied.

99.     MDF was denied benefits by reason of MDF's disabilities and sexual harassment.

100.    The ability of MDF to engage in a major life activity, namely learning, was substantially limited because he is visually and otherwise impaired with a disability, and was sexually harassed.

101.    The actions and omissions of Defendants violated the Rehabilitation Act of 1973, including Section 504, 29 U.S.C. § 701, 705, 794, and 794a.

102.    The actions and omissions of Defendants violated the Americans with Disabilities Act, including Title II and 42 U.S.C. § 12101 et seq.

WHEREFORE, MDF prays for relief against Defendants in this claim for relief, as follows:

    a.      compensatory damages as determined by a jury;

    b.      reasonable attorney fees, expert witness fees, and costs pursuant to 42 U.S.C. §12205 and 29 U.S.C. §794(a); and

    c.      such further legal and equitable relief as this Court deems just.

///

///

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury.

Respectfully submitted this 29th day of September, 2023

Respectfully submitted,
BAITY & LINDVIG, LLC


By:   /s/ Stephen J. Baity
Stephen J. Baity,
Colorado State Bar No. 13137
(303) 572-3100
sbaity@baitylegal.com