**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:23-CV-02546-RMR-NRN (Consolidated for all purposes with Civil Action No. 24-cv-02723-KAS)**

LCI, a minor, GMI, a minor, and MTI, a minor, by and through parent and next friend KERI INNIS; XHK, a minor, by and through parents and next friends PRISCILLA MULLER and COLBY KUEMMERLIN; MSH, a minor, by and through parent and next friend MATIN SAAHIRA HAAMID; and MDF, a minor, by and through parents and next friends RAQUELLE FERGUSON and JONATHAN FERGUSON,

Plaintiffs,

v.

POUDRE SCHOOL DISTRICT R-1; TYLER ZANELLA, an individual; and DOES 1-50, who are presently unknown persons,

Defendants.

And

A.M., a minor, by and through their parents and next friends D.M. and B.M.; and I.H., a minor, by and through their parents and next friends S.H. and W.H.,

Plaintiffs,

v.

POUDRE SCHOOL DISTRICT R-1; WAYNE THORNES, in his individual capacity; EMILY BICKERTON, in her individual capacity; DAVID OLIVER, in his individual capacity; SONJA NOVOVESKY, in her individual capacity; and JOHN DOES 1-5, in their individual capacities,

Defendants.

---

**DEFENDANT POUDRE SCHOOL DISTRICT R-1'S ANSWER TO PLAINTIFFS A.M.'s, A MINOR, BY AND THROUGH THEIR PARENTS AND NEXT FRIENDS D.M. AND B.M. AND I.H.'S, A MINOR, BY AND THROUGH THEIR PARENTS AND NEXT FRIENDS S.H. AND W.H., COMPLAINT AND JURY DEMAND**

---

Defendant, Poudre School District R-1 ("Defendant PSD"), by and through its undersigned counsel, Tyson & Mendes LLP, hereby answers the Complaint of A.M., a minor, by and through their parents and next friends D.M. and B.M.; and I.H., a minor, by and through their parents and next friends S.H. and W.H., as follows:

## I. INTRODUCTION

1. Defendant PSD admits on May 23, 2023 Defendant Novovesky reviewed bus surveillance video from route 2253 to investigate a parent complaint made the day before. Upon reviewing the footage, Defendant Novovesky observed Defendant Zanella hit Plaintiff A.M. Laura Chandler and Desiree Fisher were immediately notified, and they contact Rebecca Morrison in Human Resources. Ms. Morrisson notified Defendant Bickerton of the situation and Defendant Bickerton asked Erich Wonsavage to review the footage from May 22, 2023. The footage was reviewed showing Defendant Zanella inflicting abuse, and Defendant Zanella was immediately placed on administrative leave, pending termination hearing. Defendant PSD immediately reported Defendant Zanella to law enforcement on May 23, 2023. Bus surveillance video was reviewed over the next Defendant PSD denies any remaining allegations contained in paragraph 1 not specifically admitted to herein.

2. Defendant PSD admits Plaintiffs A.M. and I.H. travelled to and from their school on the bus staffed by Defendant Zanella. Defendant PSD further admits Defendant Zanella inflicted abuse on Plaintiff A.M. on March 31, 2023, April 5, 2023, April 11, 2023, April 13, 2023, April 17, 2023, April 18, 2023, April 19, 2023, April 24, 2023, April 25, 2023, April 27, 2023, May 3, 2023, May 4, 2023, May 5, 2023, May 8, 2023, May

9, 2023, May 18, 2023, May 19, 2023, and May, 22, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD further admits Defendant Zanella inflicted abuse on Plaintiff I.H. on March 29, 2023, April 17, 2023, April 24, 2023, and May 1, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD admits that Defendant Zanella's abusive behavior was discovered on May 23, 2023 after bus video footage was reviewed in response to a parent complaint. Upon discovering Defendant Zanella's abuse, Defendant PSD immediately reported Zanella to law enforcement and terminated his employment the following day. Defendant PSD denies any remaining allegations contained in paragraph 2 not specifically admitted to herein.

3. Defendant PSD admits background check results for Defendant Zanella from CBI/FBI were received on September 1, 2022, which included misdemeanor traffic offenses, including Driving Under the Influence, and failure to appear charges, but also a 2012 conviction for "child abuse – negligence – no injury." but did not include a Driving Under the Influence charge or conviction a week before he began his employment. Defendant Zanella was immediately contacted and asked for an explanation by Defendant Bickerton. Based upon all information received, the fact the child negligence misdemeanor was more than 10 years old, Defendant Zanella's transparency consistent with the police records reviewed regarding the 2012 misdemeanor due to his inability to provide proper parental care to his infant while intoxicated, , guidance from the Colorado

Department of Education ("CDE"), the Equal Employment Opportunity Commission ("EEOC"), and Society for Human Resource Management ("SHRM"), and consultation with Human Resources Directors, Defendant Zanella was cleared to work by Defendant Bickerton on September 1, 2022. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 3 not specifically admitted to herein.

4. A portion of the allegations contained in paragraph 4 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 4 directed at Defendant PSD, Defendant PSD admits Defendant Zanella inflicted abuse, but Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 4 not specifically admitted to herein.

## II. JURISDICTION AND VENUE

5. The allegations contained in paragraph 5 regarding jurisdiction are legal conclusions properly left to the determination of the Court, such that no response is required by Defendant PSD. To the extent a response is required, Defendant PSD does not dispute jurisdiction as to the Plaintiffs' federal claims. Defendant PSD disputes subject matter jurisdiction as to the state tort claims against the public employees and affirmatively states that the Court lacks subject matter jurisdiction over such claims pursuant to the Colorado Governmental Immunity Act, C.R.S. §§ 24-10-101 through 120.

To the extent paragraph 5 is construed to state factual allegations and/or implies the commission of a tortious act, wrongdoing, and/or liability, and/or implies the availability or recoverability of certain damages, Defendant PSD denies those allegations.

6. The allegations contained in paragraph 6 regarding venue are legal conclusions properly left to the determination of the Court, such that no response is required by Defendant PSD. To the extent a response is required, Defendant PSD does not dispute venue. To the extent paragraph 6 is construed to state factual allegations and/or implies the commission of a tortious act, wrongdoing, and/or liability, and/or implies the availability or recoverability of certain damages, Defendant PSD denies those allegations.

## III. PARTIES

7. Defendant PSD admits the allegations contained in paragraph 7.

8. Defendant PSD admits the allegations contained in paragraph 8.

9. Defendant PSD admits that it is a governmental entity, specifically a public School District created by the laws of the State of Colorado, located in the City of Fort Collins, County of Larimer, and that it governs and operates public schools within its boundaries. Defendant PSD affirmatively states Defendant PSD operated and managed the school bus that took students to and from their respective schools. Defendant PSD denies any remaining allegations contained in paragraph 9 not specifically admitted to herein.

10. Defendant PSD admits the allegations contained in paragraph 10 but denies to the extent paragraph 10 is construed and/or implies the commission of a tortious act,

wrongdoing, and/or liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is “so permanent and well settled as to constitute a ‘custom or usage’ with the force of law.” *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the “moving force behind the constitutional violation,” and must exhibit the municipality’s “deliberate indifference” to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

11. Defendant PSD admits the allegations contained in paragraph 11 but denies to the extent paragraph 11 is construed and/or implies the commission of a tortious act, wrongdoing, and/or liability, as Defendant PSD has sovereign immunity from any cause of action that lies in tort or could lie in tort. C.R.S. C.R.S. §§ 24-10-101 through 120. Further, Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by

an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

12. The allegations contained in paragraph 12 are not directed at Defendant PSD, such that no response is required by Defendant PSD. To the extent a response is required, Defendant PSD admits the allegations contained in paragraph 12 but denies to the extent paragraph 12 is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so

permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

13. The allegations contained in paragraph 13 are not directed at Defendant PSD, such that no response is required by Defendant PSD. To the extent a response is required, Defendant PSD admits the allegations contained in paragraph 13 but denies to the extent paragraph 13 is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

14. The allegations contained in paragraph 14 are not directed at Defendant PSD, such that no response is required by Defendant PSD. To the extent a response is required, Defendant PSD denies the allegations contained in paragraph 13 and further denies to the extent paragraph 14 is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

15. The allegations contained in paragraph 15 are not directed at Defendant PSD, such that no response is required by Defendant PSD. To the extent a response is required, Defendant PSD admits the allegations contained in paragraph 15 but denies to the extent paragraph 15 is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v.*

*Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

16. The allegations contained in paragraph 16 about Defendant Does 1-5 are not directed at Defendant PSD, such that no response is required by Defendant PSD. To the extent a response is required, Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 16 and, therefore, denies same.

17. The allegations contained in paragraph 17 are not directed at Defendant PSD, such that no response is required by Defendant PSD. To the extent a response is required, Defendant PSD does not object to Defendants Thornes, Bickerton, Oliver, Novovesky, and Doe Defendants being collectively referred to as "Individual Defendants."

## IV. FACTUAL ALLEGATIONS

18. Defendant PSD admits on August 24, 2022, initial hiring approval of Defendant Zanella was granted by Defendant Bickerton to Defendant Novovesky. The approval was based on reference checks completed, application materials, and no self-disclosed criminal history on the application. On August 29, 2022, Defendant Zanella completed a fingerprint appointment, submitted to CBI/FBI by the Human Resources Department. Background check results for Defendant Zanella from CBI/FBI were received on September 1, 2022, which included misdemeanor traffic offenses, including Driving Under the Influence, and failure to appear charges, but also a 2012 conviction for "child abuse – negligence – no injury," but did not include a Driving Under the Influence charge or conviction a week before he began his employment. Defendant Zanella was immediately contacted and asked for an explanation by Defendant Bickerton. Based upon all information received, the fact the child negligence charge was more than 10 years old, Defendant Zanella's transparency regarding the 2012 charge, and guidance from the CDE, the EEOC, and SHRM, and consultation with Human Resources Directors, Defendant Zanella was cleared to work by Defendant Bickerton on September 1, 2022. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD further admits paraprofessionals assist children with all types of special needs, including those who cannot assist themselves, and that Defendant Zanella's duties included tending to the children on the bus by, for example, helping them buckle in and stay safe during

transport. Defendant PSD denies any remaining allegations contained in paragraph 18 not specifically admitted to herein.

19. Defendant PSD admits the allegations contained in paragraph 19, adding Defendant PSD had not been aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023 – the day Defendant PSD notified Fort Collins Police Services regarding Defendant Zanella's actions.

20. Defendant PSD admits the allegations contained in paragraph 20, adding Defendant PSD had not been aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023 – the day Defendant PSD notified Fort Collins Police Services regarding Defendant Zanella's actions.

21. Defendant PSD admits the allegations contained in paragraph 21.

22. Defendant PSD admits that parents of all affected children were immediately notified upon confirmation of Defendant Zanella's actions upon them following bus video review on and in the few days after May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 22 not specifically admitted to herein.

23. Defendant PSD admits Plaintiff A.M. has autism and is mostly non-verbal. Defendant PSD further admits Plaintiff I.H. has moderate autism and limited verbal skills. Defendant PSD further admits Defendant Zanella inflicted abuse on Plaintiff A.M. on March 31, 2023, April 5, 2023, April 11, 2023, April 13, 2023, April 17, 2023, April 18, 2023, April 19, 2023, April 24, 2023, April 25, 2023, April 27, 2023, May 3, 2023, May 4, 2023, May 5, 2023, May 8, 2023, May 9, 2023, May 18, 2023, May 19, 2023, and May,

22, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD further admits Defendant Zanella inflicted abuse on Plaintiff I.H. on March 29, 2023, April 17, 2023, April 24, 2023, and May 1, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 23 not specifically admitted to herein.

24. Defendant PSD admits Defendant Zanella inflicted abuse on Plaintiff A.M. on March 31, 2023, April 5, 2023, April 11, 2023, April 13, 2023, April 17, 2023, April 18, 2023, April 19, 2023, April 24, 2023, April 25, 2023, April 27, 2023, May 3, 2023, May 4, 2023, May 5, 2023, May 8, 2023, May 9, 2023, May 18, 2023, May 19, 2023, and May, 22, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD further admits Defendant Zanella inflicted abuse on Plaintiff I.H. on March 29, 2023, April 17, 2023, April 24, 2023, and May 1, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 24 not specifically admitted to herein.

25. Defendant PSD admits Defendant Zanella inflicted abuse on Plaintiff A.M. on March 31, 2023, April 5, 2023, April 11, 2023, April 13, 2023, April 17, 2023, April 18, 2023, April 19, 2023, April 24, 2023, April 25, 2023, April 27, 2023, May 3, 2023, May 4, 2023, May 5, 2023, May 8, 2023, May 9, 2023, May 18, 2023, May 19, 2023, and May,

22, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 25 not specifically admitted to herein.

26. Defendant PSD admits the allegations contained in paragraph 26, adding Defendant PSD was not made aware of this occurrence until after May 23, 2023.

27. Defendant PSD admits Defendant Zanella abused Plaintiff A.M. more frequently than any other child on the bus, but Defendant PSD lacks the information sufficient to allow it to admit or deny Defendant Zanella's motivations for doing so.

28. Defendant PSD admits the allegations contained in paragraph 28, adding Defendant PSD was not made aware of this occurrence until after May 23, 2023.

29. Defendant PSD admits the allegations contained in paragraph 29, adding Defendant PSD was not made aware of this occurrence until after May 23, 2023.

30. Defendant PSD admits the allegations contained in paragraph 30, adding Defendant PSD was not made aware of this occurrence until after May 23, 2023.

31. Defendant PSD admits the allegations contained in paragraph 31, adding Defendant PSD was not made aware of this occurrence until after May 23, 2023.

32. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 32 and, therefore, denies same.

33. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 33 and, therefore, denies same.

34. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 34 and, therefore, denies same.

35. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 35 and, therefore, denies same.

36. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 36 and, therefore, denies same.

37. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 37 and, therefore, denies same.

38. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 38 and, therefore, denies same.

39. Defendant PSD admits Defendant Zanella inflicted abuse on Plaintiff I.H. on March 29, 2023, April 17, 2023, April 24, 2023, and May 1, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD lacks the information sufficient to allow it to admit or deny Defendant Zanella's motivations for doing so. Defendant PSD denies any remaining allegations contained in paragraph 39 not specifically admitted to herein.

40. Defendant PSD admits the allegations contained in paragraph 40, adding Defendant PSD was not made aware of this occurrence until after May 23, 2023.

41. Defendant PSD admits Defendant Zanella inflicted abuse on Plaintiff I.H. on March 29, 2023, April 17, 2023, April 24, 2023, and May 1, 2023, the extent and manner

of which was captured by bus surveillance video, which speaks for itself. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 41 not specifically admitted to herein.

42. Defendant PSD lacks the information sufficient to allow it to admit or deny Defendant Zanella's motivations for his abuse of Plaintiff I.H.

43. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 43 and, therefore, denies same, but Defendant PSD does not condone Defendant Zanella's actions or his use and teaching of foul language.

44. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 44 and, therefore, denies same.

45. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 45 and, therefore, denies same.

46. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 46 and, therefore, denies same.

47. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 47 and, therefore, denies same.

48. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 48 and, therefore, denies same.

49. Defendant PSD admits the allegations contained in paragraph 49; however, criminal charges filed against Defendant Zanella refers to a document that speaks for

itself. Defendant PSD only objects to the extent Plaintiffs have incorrectly cited, interpreted, or applied the document language.

50. Defendant PSD admits the allegations contained in paragraph 50; however, the transcript of the sentencing hearing is a document that speaks for itself. Defendant PSD only objects to the extent Plaintiffs have incorrectly cited, interpreted, or applied the document language.

51. Defendant PSD admits background check results for Defendant Zanella from CBI/FBI were received on September 1, 2022, which included misdemeanor traffic offenses, including Driving Under the Influence, and failure to appear charges, but also a 2012 conviction for "child abuse – negligence – no injury," but did not include a Driving Under the Influence charge or conviction a week before he began his employment. Defendant Zanella was immediately contacted and asked for an explanation by Defendant Bickerton. Based upon all information received, the fact the child negligence charge was more than 10 years old, Defendant Zanella's transparency regarding the 2012 charge, and guidance from the CDE, the EEOC, and SHRM, and consultation with Human Resources Directors, Defendant Zanella was cleared to work on September 1, 2022 by Defendant Bickerton. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 51 not specifically admitted to herein.

52. Defendant PSD admits on August 24, 2022, initial hiring approval of Defendant Zanella was granted by Defendant Bickerton to Defendant Novovesky. The

approval was based on reference checks completed, application materials, and no self-disclosed criminal history on the application. On August 29, 2022, Defendant Zanella completed a fingerprint appointment, submitted to CBI/FBI by the Human Resources Department. Background check results for Defendant Zanella from CBI/FBI were received on September 1, 2022, which included misdemeanor traffic offenses, including Driving Under the Influence, and failure to appear charges, but also a 2012 conviction for "child abuse – negligence – no injury," but did not include a Driving Under the Influence charge or conviction a week before he began his employment. Defendant Zanella was immediately contacted and asked for an explanation by Defendant Bickerton. Based upon all information received, the fact the child negligence charge was more than 10 years old, Defendant Zanella's transparency regarding the 2012 charge, and guidance from the CDE, the EEOC, and SHRM, and consultation with Human Resources Directors, Defendant Zanella was cleared to work by Defendant Bickerton on September 1, 2022. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 52 not specifically admitted to herein.

53. Defendant PSD admits the background check results for Defendant Zanella from CBI/FBI were received on September 1, 2022, which included misdemeanor traffic offenses, including Driving Under the Influence, and failure to appear charges, but also a 2012 conviction for "child abuse – negligence – no injury," but did not include a Driving Under the Influence charge or conviction a week before he began his employment. Defendant Zanella was immediately contacted and asked for an explanation by

Defendant Bickerton. Based upon all information received, the fact the child negligence charge was more than 10 years old, Defendant Zanella's transparency regarding the 2012 charge, and guidance from the CDE, the EEOC, and SHRM, and consultation with Human Resources Directors, Defendant Zanella was cleared to work on September 1, 2022 by Defendant Bickerton. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 53 not specifically admitted to herein.

54. Defendant PSD admits the background check results for Defendant Zanella from CBI/FBI were received on September 1, 2022, which included misdemeanor traffic offenses, including Driving Under the Influence, and failure to appear charges, but also a 2012 conviction for "child abuse – negligence – no injury," but did not include a Driving Under the Influence charge or conviction a week before he began his employment. Defendant Zanella was immediately contacted and asked for an explanation by Defendant Bickerton. Based upon all information received, the fact the child negligence charge was more than 10 years old, Defendant Zanella's transparency regarding the 2012 charge, and guidance from the CDE, the EEOC, and SHRM, and consultation with Human Resources Directors, Defendant Zanella was cleared to work on September 1, 2022 by Defendant Bickerton. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 54 not specifically admitted to herein.

55. Defendant PSD admits the background check results for Defendant Zanella from CBI/FBI were received on September 1, 2022, which included misdemeanor traffic offenses, including Driving Under the Influence, and failure to appear charges, but also a 2012 conviction for "child abuse – negligence – no injury," but did not include a Driving Under the Influence charge or conviction a week before he began his employment. Defendant Zanella was immediately contacted and asked for an explanation by Defendant Bickerton. Based upon all information received, the fact the child negligence charge was more than 10 years old, Defendant Zanella's transparency regarding the 2012 charge, and guidance from the CDE, the EEOC, and SHRM, and consultation with Human Resources Directors, Defendant Zanella was cleared to work on September 1, 2022 by Defendant Bickerton. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 55 not specifically admitted to herein.

56. Defendant PSD admits Defendant Bickerton's decision to clear Defendant Zanella to work on September 1, 2022 was based upon all information received, the fact the child negligence charge was more than 10 years old, Defendant Zanella's transparency regarding the 2012 charge, and guidance from the CDE, the EEOC, and SHRM, and consultation with Human Resources Directors. Defendant PSD denies any remaining allegations contained in paragraph 56 not specifically admitted to herein.

57. Defendant PSD admits the background check results for Defendant Zanella from CBI/FBI were received on September 1, 2022, which included misdemeanor traffic

offenses, including Driving Under the Influence, and failure to appear charges, but also a 2012 conviction for "child abuse – negligence – no injury," but did not include a Driving Under the Influence charge or conviction a week before he began his employment. Defendant Zanella was immediately contacted and asked for an explanation by Defendant Bickerton. Based upon all information received, the fact the child negligence charge was more than 10 years old, Defendant Zanella's transparency regarding the 2012 charge, and guidance from the CDE, the EEOC, and SHRM, and consultation with Human Resources Directors, Defendant Zanella was cleared to work on September 1, 2022 by Defendant Bickerton. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 57 not specifically admitted to herein.

58. Defendant PSD admits on August 24, 2022, initial hiring approval of Defendant Zanella was granted by Defendant Bickerton to Defendant Novovesky. The approval was based on reference checks completed, application materials, and no self-disclosed criminal history on the application. On August 29, 2022, Defendant Zanella completed a fingerprint appointment, submitted to CBI/FBI by the Human Resources Department, and began working. Defendant PSD affirmatively states that the Human Resources Department has since implemented measures to ensure that employees do not begin work until after their background check is cleared. Defendant PSD denies any remaining allegations contained in paragraph 58 not specifically admitted to herein.

59. Defendant PSD denies the allegations contained in paragraph 59.

60. Defendant PSD admits complaints made by parents and a teacher about Defendant Zanella were investigated each time at the school level, but those complaints were not escalated to Defendant PSD, which remained unaware of any issue until May 23, 2023. Defendant PSD has since become aware that in January 2023, Plaintiff A.M.'s teacher, Jennifer Trinkaus-Randall, approached Defendant Thornes with a concern that Plaintiff A.M. left the bus without his shoes on, which he frequently kicked off, and in April 2023 about a bruise on Plaintiff A.M.'s head, which were both investigated at the school level. Defendant PSD is not aware of any complaints made by the parents of Plaintiff A.M. Defendant PSD denies any remaining allegations contained in paragraph 60 not specifically admitted to herein.

61. A portion of the allegations contained in paragraph 61 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 61 directed at Defendant PSD, Defendant PSD admits complaints made by parents and a teacher about Defendant Zanella were investigated each time at the school level, but did not include review of bus surveillance video. Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023, and immediately reported Defendant Zanella's abuse to law enforcement and terminated Defendant Zanella the next day. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella before May 23, 2023, Defendant PSD could not have intervened. Defendant PSD denies any remaining allegations contained in paragraph 61 not specifically admitted to herein.

62. Defendant PSD admits complaints made by parents and a teacher about Defendant Zanella were investigated each time at the school level, but those complaints were not escalated to Defendant PSD, which remained unaware of any issue until May 23, 2023. Defendant PSD has since become aware that in December 2023, the Family Liaison for Shepardson Elementary, emailed Defendant Thornes regarding a complaint filed by the mother of SLE and MLE. The mother said Defendant Zanella had pulled SLE's hair and flipped her off. The mother reported speaking to Defendant Novovesky and being told Defendant Zanella was a "good guy." Defendant Thornes followed up with SLE and her mother and determined Defendant Zanella was tugging her hair in a teasing manner in an attempt at playfulness. Defendant Thornes told Defendant Zanella to stop. Defendant PSD was not made aware of this occurrence until after May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 62 not specifically admitted to herein.

63. Defendant PSD admits complaints made by parents and a teacher about Defendant Zanella were investigated each time at the school level, but those complaints were not escalated to Defendant PSD, which remained unaware of any issue until May 23, 2023. Defendant PSD has since become aware that in December 2023, the Family Liaison for Shepardson Elementary, emailed Defendant Thornes regarding a complaint filed by the mother of SLE and MLE. The mother said Defendant Zanella had pulled SLE's hair and flipped her off. The mother reported speaking to Defendant Novovesky and being told Defendant Zanella was a "good guy." Defendant Thornes followed up with SLE and her mother and determined Defendant Zanella was tugging her hair in a teasing

manner in an attempt at playfulness. Defendant Thornes told Defendant Zanella to stop. Defendant PSD was not made aware of this occurrence until after May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 63 not specifically admitted to herein.

64. Defendant PSD admits the allegations contained in paragraph 64 were learned after May 23, 2023, adding Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023.

65. Defendant PSD admits the allegations contained in paragraph 65 were learned after May 23, 2023, adding Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023.

66. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 66 and, therefore, denies same.

67. Defendant PSD admits complaints made by parents and a teacher about Defendant Zanella were investigated each time at the school level, but those complaints were not escalated to Defendant PSD, which remained unaware of any issue until May 23, 2023. Defendant PSD has since become aware that in December 2023, the Family Liaison for Shepardson Elementary, emailed Defendant Thornes regarding a complaint filed by the mother of SLE and MLE. The mother said Defendant Zanella had pulled SLE's hair and flipped her off. The mother reported speaking to Defendant Novovesky and being told Defendant Zanella was a "good guy." Defendant Thornes followed up with SLE and her mother and determined Defendant Zanella was tugging her hair in a teasing manner in an attempt at playfulness. Defendant Thornes told Defendant Zanella to stop.

Defendant PSD was not made aware of this occurrence until after May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 67 not specifically admitted to herein.

68. Defendant PSD admits complaints made by parents and a teacher about Defendant Zanella were investigated each time at the school level, but those complaints were not escalated to Defendant PSD, which remained unaware of any issue until May 23, 2023. Defendant PSD has since become aware that in December 2023, the Family Liaison for Shepardson Elementary, emailed Defendant Thornes regarding a complaint filed by the mother of SLE and MLE. The mother said Defendant Zanella had pulled SLE's hair and flipped her off. The mother reported speaking to Defendant Novovesky and being told Defendant Zanella was a "good guy." Defendant Thornes followed up with SLE and her mother and determined Defendant Zanella was tugging her hair in a teasing manner in an attempt at playfulness. Defendant Thornes told Defendant Zanella to stop. Defendant PSD was not made aware of this occurrence until after May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 68 not specifically admitted to herein.

69. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 69 and, therefore, denies same; however, Defendant PSD admits on May 23, 2023, the Transportation Department reviewed bus surveillance video for the first time in response to a parent's complaint about Defendant Zanella verbally abusing a student. Review of the bus surveillance video confirmed the parent's complaint and confirmed allegations of abuse by Defendant Zanella of another

student. That led to an expanded review of bus surveillance video, uncovering other incidents of abuse being inflicted by Defendant Zanella. The Transportation Supervisor and Transportation Director were immediately notified, and they contacted Human Resources. This was Defendant PSD's first notice of any allegations of abuse being inflicted by Defendant Zanella. Defendant Zanella was immediately placed on paid administrative leave pending a termination hearing. Fort Collins Police Services ("FCPS") was notified of the alleged abuse by Defendant Zanella that same day - May 23, 2023. Defendant PSD officials worked with FCPS to provide all needed documentation, evidence, and statements, including bus surveillance video. Defendant PSD denies any remaining allegations contained in paragraph 69 not specifically admitted to herein.

70. Defendant PSD admits Defendant Oliver was questioned about the December 2022 hair pulling and flipping off incident and the January 2023 concern about Plaintiff A.M. leaving the bus without shoes. Defendant PSD was not made aware of this occurrence until after May 23, 2023. Defendant PSD lacks the information sufficient to allow it to admit or deny any of the remaining allegations contained in paragraph 70 and, therefore, denies same.

71. Defendant PSD has since become aware that on May 30, 2023, the Principal at Bacon Elementary School notified the parents of XHK of Defendant Zanella's actions, to which the parents reported they had noticed changes and bruises. Defendant PSD was not made aware of this occurrence until after May 30, 2023. Defendant PSD denies any remaining allegations contained in paragraph 71 not specifically admitted to herein.

72. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 72 and, therefore, denies same.

73. Defendant PSD admits complaints made by parents and a teacher about Defendant Zanella were investigated each time at the school level, but those complaints were not escalated to Defendant PSD, which remained unaware of any issue until May 23, 2023. Defendant PSD has since become aware that on April 18, 2023, Teacher Jennifer Trinkaus-Randall expressed a concern to Defendant Thornes about the manner in which Defendant Zanella was lifting students by their wrists to place them in seats and inquiring whether Defendant Zanella had been through CPI training protocols. Defendant PSD was not made aware of this occurrence until after May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 73 not specifically admitted to herein.

74. Per a statement submitted by Defendant Thornes on May 27, 2023, Teacher Jennifer Trinkaus-Randall noticed red marks on Plaintiff A.M.'s face when he arrived at school in the morning of April 25, 2023. Plaintiff A.M. was immediately brought to the main office and staff took a photograph of Plaintiff A.M.'s face at that time. Video footage reviewed on or after May 23, 2023 showed a conversation between Defendant Thornes and Defendant Zanella on the school bus on April 25, 2023. Defendant Thornes asked Defendant Zanella and Defendant Oliver what happened, and Defendant Zanella explained Plaintiff A.M. was flailing and brushed his own head against the seat in front of him. There were no other causes for concern to Defendant Thornes at that time, so he asked whether Defendant Zanella had been trained for CPI protocols, which Defendant

Zanella said he had been. Defendant PSD was not made aware of this occurrence until after May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 74 not specifically admitted to herein.

75. Defendant PSD admits complaints made by parents and a teacher about Defendant Zanella were investigated each time at the school level, but those complaints were not escalated to Defendant PSD, which remained unaware of any issue until May 23, 2023. Defendant PSD lacks the information sufficient to allow it to admit or deny any of the remaining allegations contained in paragraph 75 and, therefore, denies same.

76. Defendant PSD admits the allegations contained in paragraph 76, adding Defendant PSD was not made aware of this occurrence until after May 22, 2023.

77. Defendant PSD admits the allegations contained in paragraph 77, adding Defendant PSD was not made aware of this occurrence until after May 23, 2023.

78. Defendant PSD admits the allegations contained in paragraph 78.

79. A portion of the allegations contained in paragraph 79 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 79 directed at Defendant PSD, Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023 and therefore denies that it is directly to blame for Zanella's criminal acts.

80. Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 80 and, therefore, denies same, but agrees that

no parents should have to learn about their child being repeatedly assaulted in a space they had trusted to be safe.

81. Defendant PSD denies the allegations contained in paragraph 81.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### 14th Amendment – Deliberate Indifference
### (Against All Defendants)

82. Defendant PSD adopts and restates all prior responses as though fully set forth herein.

83. A portion of the allegations contained in paragraph 83 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 83 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 83 to the extent Plaintiff implies Defendant PSD performed acts beyond the bounds of its lawful authority, if the alleged acts were done while it was purporting to or pretending to act in the performance of its official duties because Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023 at which time it reported Defendant Zanella's abuse to the FCPS.

84. The allegations contained in paragraph 84 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD denies the allegations contained in paragraph 84, adding Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social*

*Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

85. The allegation contained in paragraph 85 regarding the Fourteenth Amendment is a legal conclusion properly left to the determination of the Court, such that no response is required by Defendant PSD. To the extent a response is required, Defendant PSD disputes the application of the phrase "bodily integrity" in this circumstance but admits Defendant Zanella's actions were deplorable and the Plaintiffs should not have been abused.

86. The allegations contained in paragraph 86 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD disputes the application of the phrase "bodily integrity" in this circumstance but admits Defendant Zanella's actions were deplorable and the Plaintiffs should not have been abused. Defendant PSD denies the allegations contained in

paragraph 86 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

87. The allegations contained in paragraph 87 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD admits Defendant Zanella had no need to use force against Plaintiffs, and thus his use of force against them was disproportionate to the need presented, Defendant PSD lacks the information sufficient to allow it to admit or deny Defendant Zanella's motivations for doing so. Defendant PSD denies the allegations contained in paragraph 87 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*.

*Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

88. The allegations contained in paragraph 88 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD denies the allegations contained in paragraph 88 because Defendant Zanella's abuse was not permitted within the course and scope of his employment and therefore could not be an exercise of "official power." Defendant PSD further denies the allegations contained in paragraph 88 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy

or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

89. The allegations contained in paragraph 89 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD admits Defendant Zanella's actions were deplorable, but denies the allegations contained in paragraph 89 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability

can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

90. Defendant PSD denies the allegations contained in paragraph 90 because the "special relationship" exception states that a special relationship is created when "the state takes a person into custody and holds him there against his will." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989). Moreover, incarcerated and institutionalized individuals are in special relationships with the state, but generally students do not have this special relationship with their school. *See Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 781 (8th Cir. 2001) ("school districts are not susceptible to this state-created danger theory of § 1983 liability, because there is no constitutional duty of care for school districts, as 'state-mandated school attendance does not entail so restrictive a custodial relationship as to impose a duty upon the state.'").

91. A portion of the allegations contained in paragraph 91 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 91 directed at Defendant PSD, Defendant PSD admits on August 24, 2022, initial hiring approval of Defendant Zanella was granted by Defendant Bickerton to Defendant Novovesky. The approval was based on reference checks completed, application materials, and no self-disclosed criminal history on the application.

On August 29, 2022, Defendant Zanella completed a fingerprint appointment, submitted to CBI/FBI by the Human Resources Department. Background check results for Defendant Zanella from CBI/FBI were received on September 1, 2022, which included misdemeanor traffic offenses, including Driving Under the Influence, and failure to appear charges, but also a 2012 conviction for "child abuse – negligence – no injury," but did not include a Driving Under the Influence charge or conviction a week before he began his employment. Defendant Zanella was immediately contacted and asked for an explanation by Defendant Bickerton. Based upon all information received, the fact the child negligence charge was more than 10 years old, Defendant Zanella's transparency regarding the 2012 charge, and guidance from the CDE, the EEOC, and SHRM, and consultation with Human Resources Directors, Defendant Zanella was cleared to work by Defendant Bickerton on September 1, 2022. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 91 not specifically admitted to herein. Defendant PSD further denies the allegations contained in paragraph 91 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to

school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

92. A portion of the allegations contained in paragraph 92 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 92 directed at Defendant PSD, Defendant PSD denies the allegations because it remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 92 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an

official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

93. A portion of the allegations contained in paragraph 93 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 93 directed at Defendant PSD, Defendant PSD denies the allegations because it did have policies and procedures in place regarding abuse, harassment, and discriminatory acts. Defendant PSD further denies Plaintiffs' failure to train allegation on the ground that "[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have,

through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 93 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

94. A portion of the allegations contained in paragraph 94 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 94 directed at Defendant PSD, Defendant PSD admits on August 24, 2022, initial hiring approval of Defendant Zanella was granted by Defendant Bickerton to Defendant Novovesky. The approval was based on reference checks

completed, application materials, and no self-disclosed criminal history on the application. On August 29, 2022, Defendant Zanella completed a fingerprint appointment, submitted to CBI/FBI by the Human Resources Department. Background check results for Defendant Zanella from CBI/FBI were received on September 1, 2022, which included misdemeanor traffic offenses, including Driving Under the Influence, and failure to appear charges, but also a 2012 conviction for "child abuse – negligence – no injury," but did not include a Driving Under the Influence charge or conviction a week before he began his employment. Defendant Zanella was immediately contacted and asked for an explanation by Defendant Bickerton. Based upon all information received, the fact the child negligence charge was more than 10 years old, Defendant Zanella's transparency regarding the 2012 charge, and guidance from the CDE, the EEOC, and SHRM, and consultation with Human Resources Directors, Defendant Zanella was cleared to work by Defendant Bickerton on September 1, 2022. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 94 not specifically admitted to herein. Defendant PSD further denies the allegations contained in paragraph 94 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged

action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

95. A portion of the allegations contained in paragraph 95 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 95 directed at Defendant PSD, Defendant PSD admits it did not have any policies or procedures in place regarding the keeping or reviewing of bus surveillance video; however, Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 95 not specifically admitted to herein. Defendant PSD further denies the allegations contained in paragraph 95 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an

official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

96. Defendant PSD denies the allegations contained in paragraph 96 because it did have policies and procedures in place regarding abuse, harassment, and discriminatory acts. Defendant PSD further denies Plaintiffs' failure to train allegation on the ground that "[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

97. Defendant PSD denies the allegations contained in paragraph 97 because it did have policies and procedures in place regarding abuse, harassment, and discriminatory acts. Defendant PSD further denies Plaintiffs' failure to train allegation on the ground that "[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

98. Defendant PSD denies the allegations contained in paragraph 98 because it did have policies and procedures in place regarding abuse, harassment, and discriminatory acts. Defendant PSD further denies Plaintiffs' failure to train allegation on the ground that "[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since

Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

99. Defendant PSD denies the allegations contained in paragraph 99 because it did have policies and procedures in place regarding abuse, harassment, and discriminatory acts. Defendant PSD further denies Plaintiffs' failure to train allegation on the ground that "[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

100. A portion of the allegations contained in paragraph 100 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 100 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 100 because it did have policies and procedures in place regarding abuse, harassment, and discriminatory acts. Defendant

PSD further denies Plaintiffs' failure to train allegation on the ground that "[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 100 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The

policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

101. A portion of the allegations contained in paragraph 101 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 101 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 101 because it did have policies and procedures in place regarding abuse, harassment, and discriminatory acts. Defendant PSD further denies Plaintiffs' failure to train allegation on the ground that "[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 101 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat*

*superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

102. A portion of the allegations contained in paragraph 102 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 102 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 102. Defendant PSD further denies Plaintiffs' failure to train allegation on the ground that "[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)).

Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 102 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

103. A portion of the allegations contained in paragraph 103 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those

allegations contained in paragraph 103 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 103. Defendant PSD further denies Plaintiffs' failure to train allegation on the ground that "[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 103 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the

practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

104. A portion of the allegations contained in paragraph 104 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 104 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 104 because it remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 104 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990)

(applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

105. A portion of the allegations contained in paragraph 105 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 105 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 105 and disputes the application of the phrase "bodily integrity" in this circumstance but admits Defendant Zanella's actions were deplorable and the Plaintiffs should not have been abused. Defendant PSD denies any remaining allegations contained in paragraph 105 not specifically admitted to herein.

106. A portion of the allegations contained in paragraph 106 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 106 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 106 because it remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities

under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 106 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

107. A portion of the allegations contained in paragraph 107 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 107 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 107 because it remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella,

Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 107 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

108. A portion of the allegations contained in paragraph 108 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 108 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 108. Defendant PSD further denies

Plaintiffs' failure to train allegation on the ground that "[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 108 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at

issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

109. A portion of the allegations contained in paragraph 109 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 109 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 109 because it remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 109 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a

'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

110. A portion of the allegations contained in paragraph 110 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 110 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 110 because it remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 110 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990)

(applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

111. A portion of the allegations contained in paragraph 111 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 111 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 111 because it remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 111 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged

action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

112. Defendant PSD denies the allegations contained in paragraph 112 because it did have policies and procedures in place regarding abuse, harassment, and discriminatory acts. Defendant PSD further denies Plaintiffs' failure to train allegation on the ground that "[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies

the allegations contained in paragraph 112 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is “so permanent and well settled as to constitute a ‘custom or usage’ with the force of law.” *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the “moving force behind the constitutional violation,” and must exhibit the municipality’s “deliberate indifference” to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

113. A portion of the allegations contained in paragraph 113 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 113 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 113. Defendant PSD further denies Plaintiffs’ failure to train allegation on the ground that “[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was ‘on notice’ of the need for ‘more or different training.’” *J.V. v. Albuquerque Public Schools*,

813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 113 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

114. A portion of the allegations contained in paragraph 114 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 114 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 114 because Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 114 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the

constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

115. A portion of the allegations contained in paragraph 115 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 115 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 115 because Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 115 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d

283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

116. The allegations contained in paragraph 116 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD denies the allegations contained in paragraph 116. Defendant PSD further denies the allegations contained in paragraph 116 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

117. A portion of the allegations contained in paragraph 117 are not directed at Defendant PSD, such that no response is required from Defendant PSD. As to those allegations contained in paragraph 117 directed at Defendant PSD, Defendant PSD denies the allegations contained in paragraph 117 because Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard. Defendant PSD further denies the allegations contained in paragraph 117 to the extent it is construed and/or implies vicarious liability, as Section 1983 does not authorize liability under traditional theories of *respondeat superior*. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A school district may only be held liable if the constitutional violation arises from an official policy or custom or was carried out by an official with final policy making authority with respect to the challenged action. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (applying *Monell* to school district); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 817 (10th Cir.1990) (applying *Monell* to school board). Absent evidence of an official policy, liability can still be imposed where the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996). The policy at issue must be the "moving force behind the constitutional violation," and must exhibit the municipality's "deliberate indifference" to the

constitutional rights of those affected. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 12131 et seq.**
**Title II of the Americans with Disabilities Act of 1990, as Amended**
**Disability-Based Harassment and Discrimination**
**(Against Defendant PSD)**

118. Defendant PSD adopts and restates all prior responses as though fully set forth herein.

119. Defendant PSD admits the allegations contained in paragraph 119.

120. Defendant PSD admits the allegations contained in paragraph 120 as to Plaintiffs A.M. and I.H.

121. Defendant PSD admits the allegations contained in paragraph 121 as to Plaintiffs A.M. and I.H.

122. Defendant PSD denies the allegations contained in paragraph 122 because it can be safely concluded not *all* PSD employees had knowledge of Plaintiffs A.M.'s and I.H.'s autism.

123. Defendant PSD admits Defendant Zanella inflicted abuse on Plaintiff A.M. on March 31, 2023, April 5, 2023, April 11, 2023, April 13, 2023, April 17, 2023, April 18, 2023, April 19, 2023, April 24, 2023, April 25, 2023, April 27, 2023, May 3, 2023, May 4, 2023, May 5, 2023, May 8, 2023, May 9, 2023, May 18, 2023, May 19, 2023, and May, 22, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD further admits Defendant Zanella inflicted abuse on Plaintiff I.H. on March 29, 2023, April 17, 2023, April 24, 2023, and May 1, 2023, the

extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD lacks the information sufficient to allow it to admit or deny Defendant Zanella's motivations for doing so. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD admits complaints made by parents and a teacher about Defendant Zanella were investigated each time at the school level, but those complaints were not escalated to Defendant PSD, which remained unaware of any issue until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 123 not specifically admitted to herein.

124. Defendant PSD admits Defendant Zanella inflicted abuse on Plaintiff A.M. on March 31, 2023, April 5, 2023, April 11, 2023, April 13, 2023, April 17, 2023, April 18, 2023, April 19, 2023, April 24, 2023, April 25, 2023, April 27, 2023, May 3, 2023, May 4, 2023, May 5, 2023, May 8, 2023, May 9, 2023, May 18, 2023, May 19, 2023, and May, 22, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD further admits Defendant Zanella inflicted abuse on Plaintiff I.H. on March 29, 2023, April 17, 2023, April 24, 2023, and May 1, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD admits complaints made by parents and a teacher about Defendant Zanella were investigated each time at the school level, but those complaints were not escalated to Defendant PSD, which remained unaware of any issue until May 23, 2023. Defendant PSD denies any

remaining allegations contained in paragraph 124 not specifically admitted to herein.

125. Defendant PSD denies the allegations contained in paragraph 125, adding Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023 – the day Defendant PSD notified FCPS regarding Defendant Zanella's actions.

126. Defendant PSD denies the allegations contained in paragraph 126. Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

127. Defendant PSD denies the allegations contained in paragraph 127. Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

128. Defendant PSD denies the allegations contained in paragraph 128. Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any

abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

129. Defendant PSD denies the allegations contained in paragraph 129. Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

130. Defendant PSD denies the allegations contained in paragraph 130. Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, it could not have acted willfully and wantonly, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

131. Defendant PSD denies the allegations contained in paragraph 131 because it did have policies and procedures in place regarding abuse, harassment, and discriminatory acts. Defendant PSD further denies Plaintiffs' failure to train allegation on the ground that "[w]hen the alleged failure to act is an alleged failure to train, [the 10th

Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

132. Defendant PSD denies the allegations contained in paragraph 132 because it did have policies and procedures in place regarding abuse, harassment, and discriminatory acts. Defendant PSD further denies Plaintiffs' failure to train allegation on the ground that "[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

133. Defendant PSD denies the allegations contained in paragraph 133 because it did have policies and procedures in place regarding abuse, harassment, and discriminatory acts. Defendant PSD further denies Plaintiffs' failure to train allegation on the ground that "[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

134. Defendant PSD denies the allegations contained in paragraph 134 because "[w]hen the alleged failure to act is an alleged failure to train, [the 10th Circuit has] required a showing that the defendant was 'on notice' of the need for 'more or different training.'" *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citing *Sperry v. Maes*, 592 Fed.Appx. 688, 698 (10th Cir.2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 397 (1989)). Defendant PSD remained unaware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs,

intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

135. Defendant PSD denies the allegations contained in paragraph 135.

**THIRD CLAIM FOR RELIEF**
**29 U.S.C. § 701, et seq.**
**Section 504 of the Rehabilitation Act –**
**Disability-Based Harassment and Discrimination**
**(Against Defendant PSD)**

136. Defendant PSD adopts and restates all prior responses as though fully set forth herein.

137. The allegation contained in paragraph 137 is a quotation from Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), which speaks for itself, such that no response is required from Defendant PSD. Defendant PSD objects to the extent Plaintiffs misquoted or misapplied the statute.

138. Defendant PSD admits the allegations contained in paragraph 138 as to Plaintiffs A.M. and I.H.

139. Defendant PSD admits the allegations contained in paragraph 139.

140. Defendant PSD denies the allegations contained in paragraph 140.

141. Defendant PSD admits the allegations contained in paragraph 141 as to Plaintiffs A.M. and I.H.

142. Defendant PSD denies the allegations contained in paragraph 142 because it can be safely concluded not *all* PSD employees had knowledge of Plaintiffs A.M.'s and I.H.'s autism.

143. Defendant PSD admits Defendant Zanella inflicted abuse on Plaintiff A.M. on March 31, 2023, April 5, 2023, April 11, 2023, April 13, 2023, April 17, 2023, April 18, 2023, April 19, 2023, April 24, 2023, April 25, 2023, April 27, 2023, May 3, 2023, May 4, 2023, May 5, 2023, May 8, 2023, May 9, 2023, May 18, 2023, May 19, 2023, and May, 22, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD further admits Defendant Zanella inflicted abuse on Plaintiff I.H. on March 29, 2023, April 17, 2023, April 24, 2023, and May 1, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD lacks the information sufficient to allow it to admit or deny Defendant Zanella's motivations for doing so. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD admits complaints made by parents and a teacher about Defendant Zanella were investigated each time at the school level, but those complaints were not escalated to Defendant PSD, which remained unaware of any issue until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 143 not specifically admitted to herein.

144. Defendant PSD admits Defendant Zanella inflicted abuse on Plaintiff A.M. on March 31, 2023, April 5, 2023, April 11, 2023, April 13, 2023, April 17, 2023, April 18, 2023, April 19, 2023, April 24, 2023, April 25, 2023, April 27, 2023, May 3, 2023, May 4, 2023, May 5, 2023, May 8, 2023, May 9, 2023, May 18, 2023, May 19, 2023, and May, 22, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD further admits Defendant Zanella inflicted abuse on

Plaintiff I.H. on March 29, 2023, April 17, 2023, April 24, 2023, and May 1, 2023, the extent and manner of which was captured by bus surveillance video, which speaks for itself. Defendant PSD was not made aware and did not become aware of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Defendant PSD admits complaints made by parents and a teacher about Defendant Zanella were investigated each time at the school level, but those complaints were not escalated to Defendant PSD, which did not learn of any issue until May 23, 2023. Defendant PSD denies any remaining allegations contained in paragraph 144 not specifically admitted to herein.

145. Defendant PSD denies the allegations contained in paragraph 145, adding Defendant PSD did not learn of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023 – the day Defendant PSD notified FCPS regarding Defendant Zanella's actions.

146. Defendant PSD denies the allegations contained in paragraph 146, adding Defendant PSD did not learn of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023 – the day Defendant PSD notified FCPS regarding Defendant Zanella's actions.

147. Defendant PSD denies the allegations contained in paragraph 147. Defendant PSD did not learn of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any

student because of his or her disabilities under the applicable "deliberate indifference" standard.

148. Defendant PSD denies the allegations contained in paragraph 148. Defendant PSD did not learn of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

149. Defendant PSD denies the allegations contained in paragraph 149. Defendant PSD did not learn of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

150. Defendant PSD denies the allegations contained in paragraph 150. Defendant PSD did not learn of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any

student because of his or her disabilities under the applicable "deliberate indifference" standard.

151. Defendant PSD denies the allegations contained in paragraph 151. Defendant PSD did not learn of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, acted intentionally, maliciously, and/or with reckless and/or deliberate indifference.

152. Defendant PSD denies the allegations contained in paragraph 152. Defendant PSD did not learn of any allegations of abuse being inflicted by Defendant Zanella until May 23, 2023. Since Defendant PSD had no knowledge of any abuse being inflicted by Defendant Zanella, Defendant PSD could not have intervened, and it could not have, through its policies and programs, intentionally discriminated against any student because of his or her disabilities under the applicable "deliberate indifference" standard.

**FOURTH CLAIM FOR RELIEF**
**Negligence**
**(Against Individual Defendants)**

153. Defendant PSD adopts and restates all prior responses as though fully set forth herein.

154. The allegations contained in paragraph 154 are not directed at Defendant PSD and regard the application of Colorado Governmental Immunity Act ("CGIA") which is properly left to the determination of the Court, such that no response is required from

Defendant PSD. To the extent a response is required, Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 154 and, therefore, denies same.

155. The allegations contained in paragraph 155 are not directed at Defendant PSD, such that no response is required from Defendant PSD.

156. The allegations contained in paragraph 156 are not directed at Defendant PSD, such that no response is required from Defendant PSD.

157. The allegations contained in paragraph 157 are not directed at Defendant PSD and regard the applicable duty which is properly left to the determination of the Court, such that no response is required from Defendant PSD.

158. The allegations contained in paragraph 158 are not directed at Defendant PSD and regard the applicable duty which is properly left to the determination of the Court, such that no response is required from Defendant PSD.

159. The allegations contained in paragraph 159 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 159 and, therefore, denies same.

160. The allegations contained in paragraph 160 are not directed at Defendant PSD, such that no response is required from Defendant PSD.

161. The allegations contained in paragraph 161 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response

is required, Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 161 and, therefore, denies same.

162. The allegations contained in paragraph 162 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 162 and, therefore, denies same.

163. The allegations contained in paragraph 163 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 163 and, therefore, denies same.

164. The allegations contained in paragraph 164 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 164 and, therefore, denies same.

165. The allegations contained in paragraph 165 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 165 and, therefore, denies same.

**FIFTH CLAIM FOR RELIEF**
**Negligence Per Se**
**(Against Defendants Thornes, Oliver, and Novovesky)**

166. Defendant PSD adopts and restates all prior responses as though fully set forth herein.

167. The allegations contained in paragraph 167 are not directed at Defendant PSD and regard the application of Colorado Governmental Immunity Act ("CGIA") which is properly left to the determination of the Court, such that no response is required from Defendant PSD.

168. The allegations contained in paragraph 168 are not directed at Defendant PSD, such that no response is required from Defendant PSD.

169. The allegations contained in paragraph 169 are not directed at Defendant PSD and quote and regard the application of C.R.S. § 19-3-304(1)(a), which speaks for itself, such that no response is required from Defendant PSD. Defendant PSD objects to the extent Plaintiffs misquoted or misapplied the statute.

170. The allegation contained in paragraph 170 is not directed at Defendant PSD and regards the application of C.R.S. § 19-3-304(1)(a), which speaks for itself, such that no response is required from Defendant PSD. Defendant PSD objects to the extent Plaintiffs misquoted or misapplied the statute.

171. The allegation contained in paragraph 171 is not directed at Defendant PSD and regards the application of C.R.S. § 19-3-304(1)(a), which speaks for itself, such that no response is required from Defendant PSD. Defendant PSD objects to the extent Plaintiffs misquoted or misapplied the statute.

172. The allegation contained in paragraph 172 is not directed at Defendant PSD and regards the application of C.R.S. § 19-3-304(1)(a), which speaks for itself, such that no response is required from Defendant PSD. Defendant PSD objects to the extent Plaintiffs misquoted or misapplied the statute.

173. The allegations contained in paragraph 173 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 173 and, therefore, denies same.

174. The allegations contained in paragraph 174 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 174 and, therefore, denies same.

175. The allegations contained in paragraph 175 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD lacks the information sufficient to allow it to admit or deny the allegations contained in paragraph 175 and, therefore, denies same.

**SIXTH CLAIM FOR RELIEF**
**Outrageous Conduct**
**(Against Individual Defendants)**

176. Defendant PSD adopts and restates all prior responses as though fully set forth herein.

177. The allegations contained in paragraph 177 are not directed at Defendant PSD and regard the application of Colorado Governmental Immunity Act ("CGIA") which is properly left to the determination of the Court, such that no response is required from Defendant PSD.

178. The allegations contained in paragraph 178 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response

is required, Defendant PSD denies the allegations contained in paragraph 178.

179. The allegations contained in paragraph 179 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD denies the allegations contained in paragraph 179.

180. The allegations contained in paragraph 180 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD denies the allegations contained in paragraph 180.

181. The allegations contained in paragraph 181 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD denies the allegations contained in paragraph 181.

182. The allegations contained in paragraph 182 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD denies the allegations contained in paragraph 182.

183. The allegations contained in paragraph 183 are not directed at Defendant PSD, such that no response is required from Defendant PSD. To the extent a response is required, Defendant PSD denies the allegations contained in paragraph 183.

WHEREFORE, Defendant PSD requests this Court dismiss Plaintiffs' Complaint with prejudice and award it attorneys' fees and costs in defending against said action, together with all such other and further relief to which Defendant PSD is entitled or is just.

**AFFIRMATIVE DEFENSES**

1. Any and all state tort claims against Defendant PSD and the public employees are barred because the Court lacks subject matter jurisdiction over such

claims pursuant to the Colorado Governmental Immunity Act, C.R.S. §§ 24-10-101 through 120.

2. Defendant PSD's actions at all times complied with constitutional, statutory, and common law obligations.

3. Defendant PSD had no notice of the allegations of abuse until May 23, 2023 and *respondeat superior* cannot serve as the basis for Defendant PSD's liability under the federal claims for relief alleged.

4. Defendant PSD's liability, if any, is limited to that amount represented by its *pro rata* share of negligence or fault, if any, producing the claim, injury, damage, or loss pursuant to C.R.S. § 13-21-111.5.

5. In the event a verdict is rendered in favor of Plaintiffs and against Defendant PSD, Defendant PSD is entitled to a reduction of the damage award to the extent of any collateral source payments, pursuant to C.R.S. §13-21-111.6.

6. Plaintiffs cannot prove Defendant PSD's conduct was deliberately indifferent to Plaintiffs.

7. Defendant PSD's conduct toward Plaintiffs was non-discriminatory in all respects.

8. Plaintiffs' recoverable damages, if any, are not to the nature and extent alleged and were not caused by Defendant PSD.

9. Plaintiffs cannot state a claim for which relief may be granted.

10. Plaintiffs were not denied educational opportunities or benefits.

11. Defendant PSD's actions were reasonable in light of known circumstances.

12. Plaintiffs may have failed to exhaust administrative remedies.

13. Punitive damages are not available on some or all claims for relief.

**JURY DEMAND**

PURSUANT TO FED.R.CIV.P. 38, DEFENDANT PSD HEREBY DEMANDS THAT THIS CASE BE TRIED TO A JURY.

Dated this 16th day of December, 2024.

Tyson & Mendes LLP

By: */s/ Michael D. Drews*
Michael D. Drews, Esq.
200 Union Boulevard, Suite 200
Lakewood, Colorado 80228
Telephone: (720) 726-5893
Facsimile: (720) 408-6385
Email: mdrews@tysonmendes.com

*/s/ William R. Johnson*
William R. Johnson, Esq.
1616 Westgate Circle, Suite 330
Brentwood, Tennessee 37027
Telephone: (615) 647-6195
Facsimile: (615) 437-7896
Email: wjohnson@tysonmendes.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was filed *via* ECF on the 16th day of December, 2024, and *via* email upon the following:

Stephen J. Baity, Esq.
Baity & Lindvig, LLC
P.O. Box 370232
Denver, Colorado 80237
sbaity@baitylegal.com

[_____] U.S. Mail
[_____] Fed Ex
[_____] Fax
[_____] Hand Delivered
[__X_] E-Mailed
[__X_] E-Filed

Calvin Marshall, Esq.
Mark Ozzello, Esq.
The Ozzello Practice, PC
400 Continental Boulevard, 6th Floor
El Segundo, California 90245
cmarshall@ozzellolaw.com
cmarshall@ozzellolaw.com

[_____] U.S. Mail
[_____] Fed Ex
[_____] Fax
[_____] Hand Delivered
[__X_] E-Mailed
[__X_] E-Filed

Tyler Zanella, *pro se*
8003 5th Street
Wellington, Colorado 80549
tylerzanella@gmail.com

[_____] U.S. Mail
[_____] Fed Ex
[_____] Fax
[_____] Hand Delivered
[__X_] E-Mailed
[__X_] E-Filed

David A. Lane, Esq.
Liana Orshan, Esq.
Killmer Lane, LLP
1543 Champa Street, Suite 400
Denver, Colorado 80202
dlane@killmerlane.com
lorshan@killmerlane.com

[_____] U.S. Mail
[_____] Fed Ex
[_____] Fax
[_____] Hand Delivered
[__X_] E-Mailed
[__X_] E-Filed

Anna Holland Edwards, Esq.
Erica Grossman, Esq.
Holland, Holland Edwards & Grossman, LLC
1437 North High Street
Denver, Colorado 80218
anna@hheglaw.com
erica@hheglaw.com

[_____] U.S. Mail
[_____] Fed Ex
[_____] Fax
[_____] Hand Delivered
[__X_] E-Mailed
[__X_] E-Filed

| | |
|---|---|
| Heather R. Hanneman<br>Recht & Kornfeld, P.C.<br>1600 Stout Street, Ste. 1400<br>Denver, CO 80202<br>heather@rklawpc.com | [_____] U.S. Mail<br>[_____] Fed Ex<br>[_____] Fax<br>[_____] Hand Delivered<br>[__X__] E-Mailed<br>[__X__] E-Filed |
| Sara Ludke Cook<br>Vaghan & DeMuro<br>111 South Tejon Street, Ste. 545<br>Colorado Springs, CO 80903<br>scook@vaughandemuro.com | [_____] U.S. Mail<br>[_____] Fed Ex<br>[_____] Fax<br>[_____] Hand Delivered<br>[__X__] E-Mailed<br>[__X__] E-Filed |
| Ashleigh E. Bravo<br>Erik G. Fischer, P.C.<br>P.O. Box 506<br>125 South Howes Street, Ste. 900<br>Fort Collins, CO 80522<br>ash@fischerlawgroup.com | [_____] U.S. Mail<br>[_____] Fed Ex<br>[_____] Fax<br>[_____] Hand Delivered<br>[__X__] E-Mailed<br>[__X__] E-Filed |
| Geoffrey Klingsporn<br>Josh Marks<br>Berg Hill Greenleaf Ruscitti LLP<br>1712 Pearl Street<br>Boulder, CO 80302<br>Geoff.klingsporn@bhgrlaw.com<br>jam@bhgrlaw.com | [_____] U.S. Mail<br>[_____] Fed Ex<br>[_____] Fax<br>[_____] Hand Delivered<br>[__X__] E-Mailed<br>[__X__] E-Filed |

Signed original document maintained
and available pursuant to Rule 121.

*/s/ Heidi Carmack Cline*__________